UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| DEQUAN A., parent and next friend of J.L., a minor, | |
| Plaintiffs, | Case No. 23-cv-12675 |
| v. | Honorable Robert J. White |
| GRETCHEN WHITMER, et al., | |
| Defendants. | |

**OPINION AND ORDER GRANTING THE STATE DEFENDANTS'
MOTION TO PARTIALLY DISMISS THE SECOND AMENDED
COMPLAINT**

I.   Introduction

Dequan A. commenced this action for judicial review under the Individuals with Disabilities Education Act ("IDEA") on behalf of his minor son, J.L.   The second amended complaint alleges, among other things, that a state administrative law judge erroneously concluded that Dequan A. failed to meet his burden of showing that J.L. is entitled to extended school year services and assistive learning technologies under the IDEA.   In addition to the local school district, its superintendent, and its general counsel, the amended complaint names Michigan Governor Gretchen Whitmer, Attorney General Dana Nessel, Michigan

Superintendent of Public Instruction Dr. Michael F. Rice, and Michigan Board of Education President Dr. Pamela Pugh as party defendants (the "State Defendants").

Before the Court is the State Defendants' motion to partially dismiss the second amended complaint. (ECF No. 42).  Dequan A. responded in opposition. (ECF No. 44).  The State Defendants filed a reply. (ECF No. 48).  The Court will decide the motion without a hearing pursuant to E.D. Mich. LR 7.1(f)(2).  For the following reasons, the motion is granted.

II.   Background

   A.   *Factual History*

Dequan A. is J.L.'s father, a 13-year-old African-American child enrolled as a student in the Detroit Public Schools Community District. (ECF No. 40, PageID.1020, ¶ 24).  J.L. is a "learning disabled" and "emotionally disturbed" student who already receives special education services.[1] (*Id.*; *see also id.*, PageID.1041, ¶ 73).  Dequan A. claims that the school district failed to psychiatrically re-evaluate J.L. in October 2022 as mandated under federal law. (*Id.*, PageID.1042-43, ¶¶ 77-80).  He also alleges that the school district never invited

---

[1] The parties do not contest that J.L. suffers from Attention-Deficit/Hyperactivity Disorder and Oppositional Defiant Disorder "for which he is receiving services." (ECF No. 1-1, PageID.91 n.8).

him to J.L.'s individualized education program ("IEP") team meeting that same month.[2] (*Id.*, PageID.1045-46, ¶¶ 88-89).

Dequan A. filed an IDEA administrative due process complaint against the school district on January 19, 2023. (ECF No. 1-1, PageID.66). The Michigan Department of Education requested a hearing before the Michigan Office of Administrative Hearings and Rules. (*Id.*). An administrative law judge ("ALJ") conducted an evidentiary due process hearing on May 15-18, 2023. (*Id.*, PageID.68).

In an August 18, 2023 decision and order, the ALJ concluded that (1) Dequan A. failed to demonstrate that the school district should have psychiatrically re-evaluated J.L. in October 2022, (2) Dequan A.'s absence from the IEP team meeting did not invalidate J.L.'s IEP, and (3) the evidence failed to show that J.L. is entitled to extended school year services and assistive learning technologies. (ECF No. 1-1, PageID.92, 95-96, 100). Dequan A. contests all three findings.

---

[2] J.L.'s parents are not married. An administrative law judge concluded that the school district might not have known to notify Dequan A. about the IEP meeting since J.L.'s mother never provided Dequan A.'s contact information to school officials when she enrolled J.L. for classes. (ECF No. 1-1, PageID.91). An IEP is a document that "state[s] the student's educational status, the annual goals for the student's education, the special-educational services and aides to be provided to meet those goals, and the extent the student will be 'mainstreamed,' *i.e.*, spend time in school environments with non-disabled students." *L.H. v. Hamilton Cty. Dep't of Educ.*, 900 F.3d 779, 788 (6th Cir. 2018); *see also* 20 U.S.C. § 1414(d)(1)(A). The IEP team meeting is a conference between school officials and the student's parents where the IEP is formulated. 20 U.S.C. § 1414(d)(1)(B).

### B.    Procedural History

Dequan A. filed this lawsuit under the IDEA seeking judicial review of the ALJ's decision and order. (ECF No. 1).  Aside from challenging the ALJ's findings, the second amended complaint alleges that the State Defendants violated J.L.'s rights under the IDEA, the Americans with Disabilities Act of 1990, the Rehabilitation Act of 1973, the Fourteenth Amendment to the United States Constitution, and Article VIII, § 2 of the Michigan Constitution. (ECF No. 40, PageID.1041-80, 1082-97 ¶¶ 72-168, 173-94).  It also asserts a state law claim for ordinary negligence. (*Id.*, PageID.1080-81, 1087-88, ¶¶ 169-72, 195-98).  The State Defendants now move to dismiss the causes of action asserted against them in the second amended complaint. (ECF No. 42).

### III.   Legal Standards

Fed. R. Civ. P. 12(b)(1) provides for the dismissal of an action where the district court lacks subject matter jurisdiction.  Rule 12(b)(1) motions for lack of subject matter jurisdiction may challenge either (1) the facial sufficiency of the pleading itself, or (2) the factual grounds for invoking subject matter jurisdiction. *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994).  Facial challenges address whether the pleading alleges a basis for subject matter jurisdiction.  The Court views the pleading's allegations as true and construes them in the light most favorable to the nonmoving party. *Id.*

4

Whether a party has standing raises an issue of the Court's subject matter jurisdiction under Rule 12(b)(1). *Lyshe v. Levy*, 854 F.3d 855, 857 (6th Cir. 2017). The plaintiff, as the party invoking federal jurisdiction, carries the burden of establishing the elements of standing. *Ward v. Nat'l Patient Account Servs. Sols.*, 9 F.4th 357, 363 (6th Cir. 2021).

When reviewing a motion to dismiss the complaint for failing to state a claim, the Court must "construe the complaint in the light most favorable to the plaintiff and accept all factual allegations as true." *Daunt v. Benson*, 999 F.3d 299, 308 (6th Cir. 2021) (cleaned up); *see also* Fed. R. Civ. P. 12(b)(6). "The factual allegations in the complaint need to be sufficient to give notice to the defendant as to what claims are alleged, and the plaintiff must plead sufficient factual matter to render the legal claim plausible." *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (quotation omitted). The Court may consider "exhibits attached to the complaint" to decide the motion. *Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001).

IV.   <u>Analysis</u>

   A.   *Article III Standing*

Congress invested federal district courts with original jurisdiction over various subject matters through statutory enactment. *See, e.g.,* 28 U.S.C. §§ 1331

(federal question), 1332 (diversity of citizenship); 20 U.S.C. § 1415(i)(2)(A), (3)(A) (providing for federal judicial review of IDEA administrative proceedings).

Yet, "[n]o matter what Congress provides by statute, the plaintiff must still satisfy" the federal constitution's Article III "standing prerequisites." *Buchholz v. Tanick*, 946 F.3d 855, 867 (6th Cir. 2020). Article III of the United States Constitution limits federal court jurisdiction to actual cases or controversies. U.S. Const. art. III, § 2. The doctrine of standing emanates from this "case-or-controversy" requirement and "limits the category of litigants empowered to maintain a lawsuit in federal court to [those who] seek redress for a legal wrong." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). Federal courts "are required in every case to determine – sua sponte if the parties do not raise the issue – whether [they] are authorized by Article III to adjudicate the dispute." *Chapman v. Tristar Prods., Inc.*, 940 F.3d 299, 304 (6th Cir. 2019).

Since this case is at the pleading stage, Dequan A. must "clearly . . . allege facts demonstrating" (1) an imminent, concrete, and particularized injury-in-fact, that (2) is traceable to the State Defendants' conduct, and (3) can be redressed through a favorable judicial decision. *Spokeo*, 578 U.S. at 338 (quotation omitted); *see also Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). This "three-part test" must be satisfied for each injury he alleges, for each defendant he is suing, and

6

for each remedy he is seeking. *Bowles v. Whitmer*, 120 F.4th 1304, 1310 (6th Cir. 2024).  Here, the second and third prongs are not satisfied.

Assuming J.L. suffered concrete and particularized injuries – *i.e.*, the first standing prong – the second amended complaint omits a plausible theory that (1) fairly traces those injuries to the State Defendants' individual conduct, and (2) explains how the State Defendants could redress those injuries.

Consider how Dequan A. frames his allegations against Governor Whitmer. The second amended complaint asserts that the governor is responsible for J.L.'s injuries because she has "the ultimate obligation to ensure" that federal and state laws are enforced in Michigan. (ECF No. 40, PageID.1021-23, ¶¶ 25-29).  But "[t]o establish standing to sue the governor of a state" federal courts "need specific, plausible allegations about what the Governor has done, is doing, or might do to injure plaintiffs." *Doe v. Lee*, 102 F.4th 330, 335 (6th Cir. 2024) (quotation omitted); *see also Universal Life Church Monastery Storehouse v. Nabors*, 35 F.4th 1021, 1031 (6th Cir. 2022).  And while "governors often possess a general 'take care' power to see that the laws of the state are enforced, it is well established that such power is insufficient, by itself, to confer standing." *Lee*, 102 F.4th at 335; *see also Nabors*, 35 F.4th at 1031 (holding that a "general allegation about the Governor's 'take care' power does not suffice to invoke federal jurisdiction.").

These pleading defects undermine Dequan A.'s Article III standing to sue the remaining State Defendants as well. Allegations regarding Attorney General Dana Nessel's broad "duties" to oversee the "enforcement of State and federal laws and regulations," along with her sweeping authority to "investigate and sue local education agencies," are insufficient to establish Article III causation. (ECF No. 40, PageID.1029-30, ¶ 44). *See Gustino v. Stoneybrook W. Master Ass'n*, 842 F. App'x 323, 328 (11th Cir. 2021) (rejecting the plaintiff's argument that "he established [Article III] causation because the Attorney General has a duty to protect his constitutional rights . . .").

And like the claims asserted against the governor and the attorney general, the second amended complaint does not contain "specific, plausible allegations about what" Dr. Rice or Dr. Pugh "has done, is doing, or might do to injure" J.L. *Lee*, 102 F.4th at 335 (quotation omitted); *see also Bowles*, 120 F.4th at 1310 ("those seeking a federal venue must show a proper connection between their injury and the *defendant*.") (emphasis in original).

Nor is it altogether clear how any of the State Defendants possess the requisite authority to "likely . . . redress" Dequan A.'s injuries, *i.e.*, the third standing prong. *Bowles*, 120 F.4th at 1310 (quotation omitted); *see also Uzuegbunam v. Preczewski*, 592 U.S. 279, 285 (2021). This is because the second amended complaint lacks plausible allegations "show[ing] what a federal court could order" the State

Defendants "to do or refrain from doing" to afford J.L. relief – "a redressability defect." *Nabors*, 35 F.4th at 1032.   Dequan A.'s claims that each of the State Defendants "theoretically possesses" the general "power" to effectuate the requested relief is inadequate. *Lee*, 102 F.4th at 335; *see also Bishop v. Okla. ex rel. Edmondson*, 333 F. App'x 361, 365 (10th Cir. 2009) ("the Oklahoma officials' generalized duty to enforce state law, alone, is insufficient to subject them to a suit challenging a constitutional amendment they have no specific duty to enforce."); *Women's Emergency Network v. Bush*, 323 F.3d 937, 949-50 (11th Cir. 2003) ("Where the enforcement of a statute is the responsibility of parties other than the governor (the cabinet in this case), the governor's general executive power is insufficient to confer jurisdiction.").

Without more, Dequan A. "fail[s] to allege the second and third elements of standing: traceability and redressability." *Id*.; *see also* 13A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 3531.5 (3d ed. May 2025 Update) (stating that "causation and remedial benefit are often bound together by the perception that if the defendant has not caused the injury, an order against the defendant cannot remedy it.").   He has "no standing to sue and thus no basis for moving forward with" his substantive claims against the State Defendants. *Shelby Advocates for Valid Elections v. Hargett*, 947 F.3d 977, 982 (6th Cir. 2020).

Although the "the only function remaining to the court is that of announcing th[is] fact and dismissing the cause," this opinion will proceed to address the merits for the sake of providing a complete analysis of Dequan A.'s claims. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998); *see also Republican Nat'l Comm. v. Benson*, No. 24-262, 2024 U.S. Dist. LEXIS 192714, at *37 (W.D. Mich. Oct. 22, 2024) (addressing the merits after concluding that the plaintiffs lacked Article III standing).

### B.    *Individuals with Disabilities Education Act*

The IDEA mandates that children with disabilities receive special-education services and establishes administrative remedies to achieve that aim. *Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230, 245 (2009); *Covington v. Knox Cty. Sch. Sys.*, 205 F.3d 912, 915 (6th Cir. 2000).  The IDEA authorizes states to receive federal funding so they can provide a "free appropriate public education" ("FAPE") to children with certain physical or intellectual disabilities. 20 U.S.C. §§ 1412(a)(1)(A), 1401(3)(A)(i).   FAPE requires "special education and related services," which includes (1) an "instruction" component tailored to meet a child's educational needs, and (2) a "supportive services" component that enables the child to receive instruction. 20 U.S.C. § 1401(9), (26), (29).

The IDEA creates a formal administrative process to adjudicate disputes. *See* 20 U.S.C. § 1415(f)-(g).  A child's parent or guardian may file an administrative

complaint with the local or state educational agency challenging whether the child is indeed receiving a FAPE. 20 U.S.C. §§ 1415(b)(6)(A), (f)(1)(A); *see also* 29 U.S.C. § 1401(23)(B) (including "guardian" in the statutory term "parent").   A private right of action exists for "any party unhappy with the outcome of the administrative process" to "seek judicial review by filing a civil action in state or federal court." *Sophie G. v. Wilson Cty. Schs.*, 742 F. App'x 73, 76 (6th Cir. 2018); *see also Traverse Bay Area Intermediate Sch. Dist. v. Mich. Dep't of Educ.*, 615 F.3d 622, 629-30 (6th Cir. 2010); 20 U.S.C. § 1415(i)(2)(A).

Since the IDEA contemplates that the child's parent or guardian will be squaring off against the "local educational agency" during the administrative process, 20 U.S.C. §§ 1415(b)(6)(A), (f)(1)(A), only those parties may be "aggrieved by the findings and decision" of the administrative hearing officer and only they may be parties to "a civil action with respect to the [administrative] complaint . . ." 20 U.S.C. § 1415(i)(2)(A); *see also Stanek v. St. Charles Cmty. Unit Sch. Dist. #303*, 783 F.3d 634, 640 (7th Cir. 2015) (stating that the "IDEA designates the 'local educational agency' as the proper defendant."); *Anchorage Sch. Dist. v. M.P.*, 689 F.3d 1047, 1054 (9th Cir. 2012) (observing that either the "parents or the school district . . . may seek judicial review in state or federal court" under the IDEA); *Maroni v. Pemi-Baker Reg'l Sch. Dist.*, 346 F.3d 247, 252 (1st Cir. 2003) ("Congress sought to confer the right to judicial review of due process hearings upon all parties

11

involved in such hearings: school districts, parents, and children."); *cf. J.S. v. N.Y. State Dep't of Corr.*, 76 F.4th 32, 43 (2d Cir. 2023) (holding that the IDEA's "provisions allow only the 'parent' and 'public agency' to present a due process complaint about the provision of a FAPE to a child with a disability.").

Because the State Defendants were not parties to the administrative complaint they cannot be subject to this private "civil action . . . respect[ing]" that same pleading. 20 U.S.C. § 1415(i)(2)(A).  Insofar as the IDEA claim is asserted against the State Defendants it must, therefore, be dismissed.

C.    *Federal Anti-Disability Discrimination Statutes*

Title II of the Americans with Disabilities Act prohibits state and local entities from excluding individuals with disabilities from their "services," "programs," and "activities." 42 U.S.C. § 12132; *see also Y.A. v. Hamtramck Pub. Sch.*, 137 F.4th 862, 869 (6th Cir. 2025).  The statute covers state and local governments as well as "their instrumentalities." *Y.A.*, 137 F.4th at 869; *see also* 42 U.S.C. § 12131(1)(A)-(B).

Section 504 of the Rehabilitation Act forbids excluding persons with disabilities from participating in, being denied the benefits of, or being subjected to discrimination "under any program or activity receiving Federal financial assistance . . ." 29 U.S.C. § 794(a).  The statute applies to entities such as "a department, agency,

12

special purpose district, or other instrumentality of a State or of a local government." 29 U.S.C. § 794(b)(1)(A).

"Claims brought under the ADA and Section 504 generally are evaluated together." *M.G. ex rel. C.G. v. Williamson Cnty. Schs.*, 720 F. App'x 280, 287 (6th Cir. 2018); *see also Knox Cnty. v. M.Q.*, 62 F.4th 978, 1000 (6th Cir. 2023). "Each Act allows disabled individuals to sue certain entities . . . [who] discriminate against them . . . because of their disability." *Gohl v. Livonia Pub. Sch. Sch. Dist.*, 836 F.3d 672, 681 (6th Cir. 2016). And each statute authorizes lawsuits against public officials acting in their official capacities.[3] *See Everson v. Leis*, 556 F.3d 484, 501 n.7 (6th Cir. 2009) ("the proper defendant under a Title II claim is the public entity or an official acting in his official capacity."); *see also Carten v. Kent State Univ.*, 282 F.3d 391, 396-98 (6th Cir. 2002) (holding that official capacity claims against individual public officials is permissible under both the ADA and the Rehabilitation Act).

---

[3] The State Defendants appear to disagree on this well-settled point. (ECF No. 26, PageID.955) (stating that "[p]laintiffs' ADA claim fails because an action under the ADA does not impose liability upon individuals."). But it seems more likely that they fail to appreciate the distinction between lawsuits brought against public officials in their *individual capacities* as opposed to *official capacities*. Individual capacity claims are prohibited under both Title II to the ADA and the Rehabilitation Act. *See M.J. v. Akron City Sch. Dist. Bd. of Educ.*, 1 F.4th 436, 452 n.9 (6th Cir. 2021) ("Neither the ADA nor the Rehabilitation Act supports a claim against a public official acting in his or her individual capacity."). Official capacity claims, as noted above, are permitted.

In this case, Dequan A. cannot establish that the State Defendants discriminated against J.L. based on his purported disability because the second amended complaint lacks any plausible allegations showing they were even aware of J.L.'s existence, let alone his disability.  Since the second amended complaint fails to plausibly demonstrate this basic element, both the ADA and Rehabilitation Act claims cannot survive the State Defendants' motion to dismiss.[4] *See Townsend v. Guidance Ctr.*, No. 24-1187, 2024 U.S. App. LEXIS 24989, at *4-5 (6th Cir. Oct. 2, 2024) (affirming dismissal of Title II ADA and Rehabilitation Act claims because the plaintiff "ha[d] not pleaded any facts that he was discriminated against based on the alleged disability.").

### D.    *Fourteenth Amendment to the United States Constitution*

The Fourteenth Amendment to the United States Constitution prohibits states from "depriv[ing] any person of life, liberty, or property, without due process of law" and "denyin[g] to any person within [their] jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.  Section 5 to the Fourteenth Amendment

---

[4] The State Defendants argue that Dequan A. must plausibly allege they exhibited "bad faith" or "gross misjudgment" to obtain compensatory damages for discrimination under Title II to the ADA and the Rehabilitation Act. (ECF No. 26, PageID.955, 957).  This is no longer the applicable standard.  Plaintiffs must now demonstrate that public officials acted with deliberate indifference, *i.e.*, that "the defendant disregarded a strong likelihood that the challenged action would result in a violation of federally protected rights." *A.J.T. v. Osseo Area Sch., Indep. Sch. Dist. No. 279*, 605 U.S. 335, 345 (2025) (quotation omitted).

empowers Congress to "enforce this article through appropriate legislation." *Id.* at §
5.  Congress enacted 42 U.S.C. § 1983 pursuant to its power under section 5 to
enforce the Amendment's substantive provisions. *See Ngiraingas v. Sanchez*, 495
U.S. 182, 187 (1990).  The statute precludes any "person" acting "under color" of
state law from depriving "any citizen of the United States or other person within the
jurisdiction thereof . . . of any rights, privileges, or immunities secured by the
Constitution and laws." 42 U.S.C. § 1983.

Dequan A. maintains that the Fourteenth Amendment's procedural due
process guarantees require the State Defendants to provide him with free copies of
the administrative docket sheet and hearing transcripts.  This contention is incorrect.

To begin with, procedural due process does not confer any right upon civil
litigants to obtain free transcripts. *See Doe v. Tennessee*, No. 19-6019, 2020 U.S.
App. LEXIS 30014, at *11 (6th Cir. Sep. 18, 2020) (holding that "the Federal
Constitution does not forbid the charging of a fee for a transcript of a civil matter.")
(quotation omitted); *see also Hill v. Michigan*, 488 F.2d 609, 610 (6th Cir. 1973) (per
curiam) (same).

And even if it did, the amended complaint fails to plausibly allege how each
individual State Defendant deprived Dequan A. of that right. *See Top Flight Ent. Ltd.
v. Schuette*, 729 F.3d 623, 634 (6th Cir. 2013) ("A plaintiff must allege facts showing
how a state official is connected to, or has responsibility for, the alleged

constitutional violations."); *see also Floyd v. Cnty. of Kent*, 454 F. App'x 493, 499

(6th Cir. 2012) (holding that state officials "must have, by virtue of the office, some

connection with the alleged unconstitutional act or conduct of which the plaintiff

complains.").  For both these reasons, the Fourteenth Amendment claim against the

State Defendants cannot withstand Rule 12(b)(6) dismissal.

>    E.    *State-Created Danger Doctrine*

As discussed above, the Fourteenth Amendment guarantees that no "State

[shall] deprive any person of life, liberty, or property, without due process of law."

U.S. Const. amend. XIV § 1.  "But nothing in the language of the Due Process Clause

itself requires the State to protect the life, liberty, and property of its citizens against

invasion by private actors." *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489

U.S. 189, 195 (1989); *see also M.J. v. Akron City Sch. Dist. Bd. of Educ.*, 1 F.4th

436, 448 (6th Cir. 2021).  So usually "a State's failure to protect an individual against

private violence simply does not constitute a violation of the Due Process Clause."

*DeShaney*, 489 U.S. at 197.

There is an exception to this general rule, however: the "state-created danger

doctrine." *Lipman v. Budish*, 974 F.3d 726, 742 (6th Cir. 2020).  The doctrine applies

"when the state affirmatively acts in a way that either creates or increases a risk that

an individual will be exposed to private acts of violence." *Id.* at 744 (quotation

omitted).  It requires a showing of (1) "an affirmative act" that "created or increased

the risk" the plaintiff would be exposed to a private act of violence, (2) "a special danger" that "placed the plaintiff specifically at risk" as opposed to a risk to "the public at large," and (3) that "the state knew or should have known that its actions specifically endangered the plaintiff." *Cartwright v. City of Marine City*, 336 F.3d 487, 493 (6th Cir. 2003).

None of these elements are apparent from the second amended complaint. Dequan A. does not plausibly explain how the State Defendants "placed" J.L. "specifically at risk" of any violent act from a private third-party. And even if they somehow did place J.L. in such a predicament, Dequan A. fails to show how the State Defendants could have known their actions endangered J.L. *specifically* when there is no plausible basis to surmise they even knew of J.L.'s existence. *See Jones v. Reynolds*, 438 F.3d 685, 696 (6th Cir. 2006) (observing that "[i]n the only cases where we have recognized a 'state created danger,' the government could have specified whom it was putting at risk, nearly to the point of naming the possible victim or victims."). As a result, the second amended complaint falls short of stating a plausible claim for relief under a "state-created danger" theory.

F.      *The Michigan Constitution*

Next, Dequan A. maintains that the State Defendants violated Article VIII, § 2 of the Michigan Constitution. That provision directs the Michigan Legislature to

"maintain and support a system of free public elementary and secondary schools as defined by law." Mich. Const. art. VIII, § 2.  The claim falters on two grounds.

*First*, Michigan's state "sovereign immunity, guaranteed by the Eleventh Amendment of the United States Constitution, precludes plaintiffs from suing the state in federal court to remedy a violation of . . . the Michigan Constitution." *Bauserman v. Unemployment Ins. Agency*, 509 Mich. 673, 710 (2022).  Likewise, "a claim that state officials violated state law in carrying out their official responsibilities is a claim against the State that is protected by the Eleventh Amendment." *Pennhurst State Sch. and Hosp. v. Halderman*, 465 U.S. 89, 121 (1984); *see also Ladd v. Marchbanks*, 971 F.3d 574, 582 (6th Cir. 2020) ("[T]o the extent Plaintiffs seek equitable relief against [the Director of the Ohio Department of Transportation] for violating the Ohio Constitution, we have no authority to grant it.").

*Second*, Michigan courts do not recognize a "direct cause of action arising under" Article VIII, § 2 of the Michigan Constitution. *L.M. v. State*, 307 Mich. App. 685, 696 (2014).  So Dequan A. cannot resort to the state constitution to obtain the relief he seeks in the second amended complaint.

G.     *Negligence*

Lastly, Dequan A. claims that the State Defendants "breached their duty to provide disabled J.L. a school environment where a known [learning disabled] and

18

[emotionally disturbed] student can realize a FAPE, and a state guaranteed public education" in a non-violent setting. (ECF No. 40, PageID.1080-81, ¶ 169).

At the motion to dismiss stage, ordinary negligence requires a plausible assertion that "(1) the defendant owed the plaintiff a duty, (2) the defendant breached that duty, (3) the breach was the proximate cause of the plaintiff's injury, and (4) the plaintiff suffered damages." *Estate of Trueblood v P&G Apartments, LLC*, 327 Mich. App. 275, 285 (2019) (quotation omitted).

But Dequan A. points to no authorities establishing a duty under Michigan tort law to provide a FAPE or a guaranteed public education to students with disabilities. And assuming state law provided for such a general duty, there is no legal basis for concluding that the State Defendants are the public officials who owe that duty to J.L. *See Terry v. City of Detroit*, 226 Mich. App. 418, 424 (1997) (establishing the factors Michigan courts must consider when imposing a legal duty, including "foreseeability of the harm," the "degree of certainty of injury," the "existence of a relationship between the parties involved," and the "closeness of connection between the conduct and injury"). Absent this showing – *i.e.*, the existence of a legal duty owed to J.L. – the negligence claim against the State Defendants must be dismissed. Accordingly,

IT IS ORDERED that the State Defendants' motion to partially dismiss the amended complaint (ECF No. 42) is granted.

IT IS FURTHER ORDERED that the Clerk of the Court is directed to terminate Governor Whitmer, Attorney General Nessel, and Drs. Rice and Pugh from the docket as party defendants to this action.

Dated: September 5, 2025                    s/ Robert J. White
                                            Robert J. White
                                            United States District Judge

20