UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| DEQUAN A., parent and next friend of J.L., a minor, | |
| Plaintiffs, | Case No. 23-cv-12675 |
| v. | Honorable Robert J. White |
| GRETCHEN WHITMER, et al., | |
| Defendants. | |

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART THE DISTRICT DEFENDANTS' MOTION TO PARTIALLY DISMISS THE SECOND AMENDED COMPLAINT

I.   <u>Introduction</u>

Dequan A. commenced this action for judicial review under the Individuals with Disabilities Education Act ("IDEA") on behalf of his minor son, J.L.  The second amended complaint alleges, among other things, that a state administrative law judge erroneously concluded that Dequan A. failed to meet his burden of showing that J.L. is entitled to extended school year services and assistive learning technologies under the IDEA.  It also names the Detroit Public Schools Community District, the district's superintendent, Dr. Nikolai Vitti, and the district's general counsel, Jenice Mitchell Ford, as party defendants (the "District Defendants").

Before the Court is the District Defendants' motion to partially dismiss the second amended complaint. (ECF No. 46).   Dequan A. responded in opposition. (ECF No. 49).   The District Defendants filed a reply. (ECF No. 51).   The Court will decide the motion without a hearing pursuant to E.D. Mich. LR 7.1(f)(2).   For the following reasons, the motion is granted in part and denied in part.

II.   <u>Background</u>

A.   *Factual History*

Dequan A. is J.L.'s father, a 13-year-old African-American child enrolled as a student in the Detroit Public Schools Community District. (ECF No. 40, PageID.1020, ¶ 24).   J.L. is a "learning disabled" and "emotionally disturbed" student who already receives special education services.[1] (*Id.*; *see also id.*, PageID.1041, ¶ 73).   Dequan A. claims that the district failed to psychiatrically re-evaluate J.L. in October 2022 as mandated under federal law. (*Id.*, PageID.1042-43, ¶¶ 77-80).   He also alleges that the school district never invited him to J.L.'s individualized education program ("IEP") team meeting that same month.[2] (*Id.*, PageID.1045-46, ¶¶ 88-89).

---

[1] The parties do not contest that J.L. suffers from Attention-Deficit/Hyperactivity Disorder and Oppositional Defiant Disorder "for which he is receiving services." (ECF No. 1-1, PageID.91 n.8).

[2] J.L.'s parents are not married.   An administrative law judge concluded that the school district might not have known to notify Dequan A. about the IEP team

Dequan A. filed an IDEA administrative due process complaint against the district on January 19, 2023. (ECF No. 1-1, PageID.66).  The Michigan Department of Education requested a hearing before the Michigan Office of Administrative Hearings and Rules. (*Id.*).  An administrative law judge ("ALJ") conducted an evidentiary due process hearing on May 15-18, 2023. (*Id.*, PageID.68).

In an August 18, 2023 decision and order, the ALJ concluded that (1) Dequan A. failed to demonstrate that the district should have psychiatrically re-evaluated J.L. in October 2022, (2) Dequan A.'s absence from the IEP team meeting did not invalidate J.L.'s IEP, and (3) the evidence failed to show that J.L. is entitled to extended school year services and assistive learning technologies. (ECF No. 1-1, PageID.92, 95-96, 100).  Dequan A. contests all three findings.

### B.    Procedural History

Dequan A. filed this lawsuit under the IDEA seeking judicial review of the ALJ's decision and order. (ECF No. 1).  Aside from challenging the ALJ's findings, the second amended complaint alleges that the District Defendants violated J.L.'s

---

meeting since J.L.'s mother never provided Dequan A.'s contact information to school officials when she enrolled J.L. for classes. (ECF No. 1-1, PageID.91).  An IEP is a document that "state[s] the student's educational status, the annual goals for the student's education, the special-educational services and aides to be provided to meet those goals, and the extent the student will be 'mainstreamed,' *i.e.*, spend time in school environments with non-disabled students." *L.H. v. Hamilton Cty. Dep't of Educ.*, 900 F.3d 779, 788 (6th Cir. 2018); *see also* 20 U.S.C. § 1414(d)(1)(A).  The IEP team meeting is a conference between school officials and the student's parents where the IEP is formulated. 20 U.S.C. § 1414(d)(1)(B).

rights under the IDEA, the Americans with Disabilities Act of 1990, the Rehabilitation Act of 1973, the Fourteenth Amendment to the United States Constitution, and Article VIII, § 2 of the Michigan Constitution. (ECF No. 40, PageID.1041-80, 1082-97 ¶¶ 72-168, 173-94).  It also asserts a state law claim for ordinary negligence. (*Id.*, PageID.1080-81, 1087-88, ¶¶ 169-72, 195-98).  The District Defendants now move to dismiss the causes of action asserted against them in the second amended complaint. (ECF No. 46).

III.   Legal Standards

When reviewing a motion to dismiss the complaint for failing to state a claim, the Court must "construe the complaint in the light most favorable to the plaintiff and accept all factual allegations as true." *Daunt v. Benson*, 999 F.3d 299, 308 (6th Cir. 2021) (cleaned up); *see also* Fed. R. Civ. P. 12(b)(6).  "The factual allegations in the complaint need to be sufficient to give notice to the defendant as to what claims are alleged, and the plaintiff must plead sufficient factual matter to render the legal claim plausible." *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (quotation omitted).  The Court may consider "exhibits attached to the complaint" to decide the motion. *Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001).

IV.   Analysis

A.   *Individuals with Disabilities Education Act*

4

The IDEA mandates that children with disabilities receive special-education services and establishes administrative remedies to achieve that aim. *Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230, 245 (2009); *Covington v. Knox Cty. Sch. Sys.*, 205 F.3d 912, 915 (6th Cir. 2000). The IDEA authorizes states to receive federal funding so they can provide a "free appropriate public education" ("FAPE") to children with certain physical or intellectual disabilities. 20 U.S.C. §§ 1412(a)(1)(A), 1401(3)(A)(i). FAPE requires "special education and related services," which includes (1) an "instruction" component tailored to meet a child's educational needs, and (2) a "supportive services" component that enables the child to receive instruction. 20 U.S.C. § 1401(9), (26), (29).

The IDEA creates a formal administrative process to adjudicate disputes. *See* 20 U.S.C. § 1415(f)-(g). A child's parent or guardian may file an administrative complaint with the local or state educational agency challenging whether the child is receiving a FAPE. 20 U.S.C. §§ 1415(b)(6)(A), (f)(1)(A); *see also* 29 U.S.C. § 1401(23)(B) (including "guardian" in the statutory term "parent"). A private right of action exists for "any party unhappy with the outcome of the administrative process" to "seek judicial review by filing a civil action in state or federal court." *Sophie G. v. Wilson Cty. Schs.*, 742 F. App'x 73, 76 (6th Cir. 2018); *see also Traverse Bay Area Intermediate Sch. Dist. v. Mich. Dep't of Educ.*, 615 F.3d 622, 629-30 (6th Cir. 2010); 20 U.S.C. § 1415(i)(2)(A).

Since the IDEA contemplates that the child's parent or guardian will be squaring off against the "local educational agency" during the administrative process, 20 U.S.C. §§ 1415(b)(6)(A), (f)(1)(A), only those parties may be "aggrieved by the findings and decision" of the administrative hearing officer and only they may be parties to "a civil action with respect to the [administrative] complaint . . ." 20 U.S.C. § 1415(i)(2)(A); *see also Stanek v. St. Charles Cmty. Unit Sch. Dist. #303*, 783 F.3d 634, 640 (7th Cir. 2015) (stating that the "IDEA designates the 'local educational agency' as the proper defendant."); *Anchorage Sch. Dist. v. M.P.*, 689 F.3d 1047, 1054 (9th Cir. 2012) (observing that either the "parents or the school district . . . may seek judicial review in state or federal court" under the IDEA); *Maroni v. Pemi-Baker Reg'l Sch. Dist.*, 346 F.3d 247, 252 (1st Cir. 2003) ("Congress sought to confer the right to judicial review of due process hearings upon all parties involved in such hearings: school districts, parents, and children."); *cf. J.S. v. N.Y. State Dep't of Corr.*, 76 F.4th 32, 43 (2d Cir. 2023) (holding that the IDEA's "provisions allow only the 'parent' and 'public agency' to present a due process complaint about the provision of a FAPE to a child with a disability.").

Because Dr. Vitti and Ford were not parties to the administrative complaint they cannot be subject to this private "civil action . . . respect[ing]" that same pleading. 20 U.S.C. § 1415(i)(2)(A). Insofar as the IDEA claim is asserted against

them it must be dismissed.  The portion of the claim asserted against the district may

proceed.[3]

B.    *Federal Antidiscrimination Statutes*

Title II of the Americans with Disabilities Act prohibits state and local entities

from excluding individuals with disabilities from their "services," "programs," and

"activities." 42 U.S.C. § 12132; *see also Y.A. v. Hamtramck Pub. Sch.*, 137 F.4th

862, 869 (6th Cir. 2025).  The statute covers state and local governments as well as

"their instrumentalities." *Y.A.*, 137 F.4th at 869; *see also* 42 U.S.C. § 12131(1)(A)-

(B).

Section 504 of the Rehabilitation Act forbids excluding persons with

disabilities from participating in, being denied the benefits of, or being subjected to

discrimination "under any program or activity receiving Federal financial assistance

. . ." 29 U.S.C. § 794(a).  The statute applies to entities such as "a department, agency,

special purpose district, or other instrumentality of a State or of a local government."

29 U.S.C. § 794(b)(1)(A).

---

[3] The District Defendants argue that portions of the IDEA claim are not fully exhausted because Dequan A. did not raise these issues at the due process hearing. (ECF No. 46, PageID.1269-70).  Because the Court lacks access to the full administrative record at this juncture, it will reserve decision on the exhaustion question for summary judgment. *See Parker v. W. Carroll Special Sch. Dist.*, No. 21-5700, 2022 U.S. App. LEXIS 6572, at *9 (6th Cir. Mar. 14, 2022) (holding that "the district court was not precluded from revisiting the exhaustion issue on a more developed record at the summary-judgment stage" of an IDEA case).

"Claims brought under the ADA and Section 504 generally are evaluated together." *M.G. ex rel. C.G. v. Williamson Cnty. Schs.*, 720 F. App'x 280, 287 (6th Cir. 2018); *see also Knox Cnty. v. M.Q.*, 62 F.4th 978, 1000 (6th Cir. 2023).   "Each Act allows disabled individuals to sue certain entities . . . [who] discriminate against them . . . because of their disability." *Gohl v. Livonia Pub. Sch. Sch. Dist.*, 836 F.3d 672, 681 (6th Cir. 2016).   And each statute authorizes lawsuits against public officials acting in their official capacities.[4] *See Everson v. Leis*, 556 F.3d 484, 501 n.7 (6th Cir. 2009) ("the proper defendant under a Title II claim is the public entity or an official acting in his official capacity."); *see also Carten v. Kent State Univ.*, 282 F.3d 391, 396-98 (6th Cir. 2002) (holding that official capacity claims against individual public officials are permissible under both the ADA and the Rehabilitation Act).

A plausible claim under Title II of the ADA requires a showing that (1) J.L. has a disability; (2) he was otherwise qualified to participate in a public program;

---

[4] The District Defendants appear to disagree on this well-settled point. (ECF No. 46, PageID.1247) (stating that the ADA and the Rehabilitation Act do not "impose liability upon individuals.").   But it seems more likely that they fail to appreciate the distinction between lawsuits brought against public officials in their *individual capacities* as opposed to *official capacities*.   Individual capacity claims are prohibited under both Title II of the ADA and the Rehabilitation Act. *See M.J. v. Akron City Sch. Dist. Bd. of Educ.*, 1 F.4th 436, 452 n.9 (6th Cir. 2021) ("Neither the ADA nor the Rehabilitation Act supports a claim against a public official acting in his or her individual capacity.").   Official capacity claims, as noted above, are permitted.

and (3) he was excluded from participation in the program or discriminated against by a public entity because of his disability.[5] 42 U.S.C. § 12132; *see Anderson v. City of Blue Ash*, 798 F.3d 338, 357 (6th Cir. 2015).   Section 504 of the Rehabilitation Act requires the same elements; the only difference is that the alleged discrimination must be "solely" because of the disability. 29 U.S.C. § 794; *S.S. v. E. Ky. Univ.*, 532 F.3d 445, 452-53 (6th Cir. 2008).   Under either statute, "a showing of discrimination requires evidence of something more than a school district's failure to provide a FAPE." *Knox Cnty.*, 62 F.4th at 1000; *see also S.S.*, 532 F.3d at 453.

With respect to the ADA's second prong, a "handicapped or disabled person is 'otherwise qualified' to participate in a program if she can meet its necessary requirements with reasonable accommodation." *Kaltenberger v. Ohio Coll. of Podiatric Med.*, 162 F.3d 432, 435 (6th Cir. 1998) (citation omitted).   "A plaintiff asserting a violation of the ADA or Rehabilitation Act bears the burden to establish that he is qualified." *Shaikh v. Lincoln Mem'l Univ.*, 608 F. App'x 349, 353 (6th Cir. 2015) (quotation omitted).   The plaintiff meets this burden by "proposing an accommodation and proving that it is reasonable, including establishing that he can meet a program's necessary requirements with that accommodation." *Mbawe v.*

---

[5] The District Defendants acknowledge that J.L. "has a disability as defined under the ADA." (ECF No. 46, PageID.1248 n.1).

9

*Ferris State Univ.*, 751 F. App'x 832, 839 (6th Cir. 2018) (quotations omitted); *see also Shaikh*, 608 F. App'x at 353.

For the third ADA prong, disability discrimination claims syphon into two available theories: intentional discrimination or failure to reasonably accommodate. *See Wilson v. Gregory*, 3 F.4th 844, 859-60 (6th Cir. 2021); *Roell v. Hamilton Cnty.*, 870 F.3d 471, 488 (6th Cir. 2017).  Intentional discrimination occurs when the defendant treats the plaintiff less favorably because of his disability. *Knox Cnty.*, 62 F.4th at 1000.  With this sort of claim, "proof of discriminatory motive is critical." *Id.* (cleaned up); *see also Tchankpa v. Ascena Retail Group, Inc.*, 951 F.3d 805, 818 (6th Cir. 2020).

On the other track, failure-to-accommodate claims require the plaintiff to show (1) "the defendant reasonably could have accommodated his disability but refused to do so," and (2) "that this failure to accommodate impeded his ability to participate in, or benefit from, the subject program." *Knox Cnty.*, 62 F.4th at 1000 (cleaned up).

The second amended complaint appears to pursue a failure-to-accommodate theory since there are no plausible allegations that the District Defendants harbored or exhibited discriminatory animus towards J.L. because of his disability. (ECF No. 40, PageID.1053, ¶ 110). *See Tchankpa*, 951 F.3d at 818 (affirming dismissal of ADA

discrimination claim where "[n]othing in the complaint establishe[d] disparate treatment based on disability.").

Employing the failure-to-accommodate rubric, Dequan A. fails to sufficiently plead that J.L. was "otherwise qualified" to participate as a student in the district, *i.e.*, the second ADA prong. The second amended complaint contains no plausible allegations that either Dequan A. or J.L.'s mother proposed any accommodation to the District Defendants whatsoever. (ECF No. 40, PageID.1051-53, ¶¶ 106-09). And there are no corresponding allegations that the District Defendants ever rejected a proposed accommodation from them, *i.e.*, the third ADA prong. (*Id.*).

Because this critical information is missing from the second amended complaint, Dequan A. is not entitled to relief under Title II of the ADA or section 504 of the Rehabilitation Act.[6] *See Lonergan v. Gallagher Sharp, LLP*, No. 24-02067, 2025 U.S. Dist. LEXIS 173112, at *10-11 (N.D. Ohio Sep. 5, 2025); *Gryder v. Buttigieg*, No. 20-255, 2022 U.S. Dist. LEXIS 34534, at *11-13 (E.D. Tenn. Feb. 28, 2022) (dismissing a Rehabilitation Act failure-to-accommodate claim because

---

[6] The District Defendants argue that Dequan A. must plausibly allege they exhibited "bad faith" or "gross misjudgment" to obtain compensatory damages for discrimination under Title II of the ADA and the Rehabilitation Act. (ECF No. 46, PageID.1250). This is no longer the applicable standard. Plaintiffs must now demonstrate that public officials acted with deliberate indifference, *i.e.*, that "the defendant disregarded a strong likelihood that the challenged action would result in a violation of federally protected rights." *A.J.T. v. Osseo Area Sch., Indep. Sch. Dist. No. 279*, 605 U.S. 335, 345 (2025) (quotation omitted).

the plaintiff failed to plead "sufficient factual allegations to support that he requested a reasonable accommodation and was denied."); *Hamilton v. Shelby Cty.*, No. 20-2911, 2021 U.S. Dist. LEXIS 85144, at *16 (W.D. Tenn. May 4, 2021) ("Merely stating accommodations were requested and that those requests were ignored is insufficient to survive a motion to dismiss."); *cf. Mbawe*, 751 F. App'x at 839 (affirming summary judgment in favor of the educational institution where the student "never proposed any accommodation that would have allowed him to continue his studies").

C.    *Fourteenth Amendment to the United States Constitution*

The Fourteenth Amendment to the United States Constitution prohibits states from "depriv[ing] any person of life, liberty, or property, without due process of law" and "denyin[g] to any person within [their] jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.  Section 5 to the Fourteenth Amendment empowers Congress to "enforce this article through appropriate legislation." *Id.* at § 5.  Congress enacted 42 U.S.C. § 1983 pursuant to its power under section 5 to enforce the Amendment's substantive provisions. *See Ngiraingas v. Sanchez*, 495 U.S. 182, 187 (1990).  The statute precludes any "person" acting "under color" of state law from depriving "any citizen of the United States or other person within the jurisdiction thereof . . . of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983.

Dequan A. maintains that the Fourteenth Amendment's procedural due process guarantees require the District Defendants to provide him with free copies of the administrative docket sheet and hearing transcripts.   This contention is incorrect.

To begin with, procedural due process does not confer any right upon civil litigants to obtain free transcripts. *See Doe v. Tennessee*, No. 19-6019, 2020 U.S. App. LEXIS 30014, at *11 (6th Cir. Sep. 18, 2020) (holding that "the Federal Constitution does not forbid the charging of a fee for a transcript of a civil matter.") (quotation omitted); *see also Hill v. Michigan*, 488 F.2d 609, 610 (6th Cir. 1973) (per curiam) (same).

And even if it did, the amended complaint fails to plausibly allege how each District Defendant deprived Dequan A. of that right. *See Top Flight Ent. Ltd. v. Schuette*, 729 F.3d 623, 634 (6th Cir. 2013) ("A plaintiff must allege facts showing how a state official is connected to, or has responsibility for, the alleged constitutional violations."); *see also Floyd v. Cnty. of Kent*, 454 F. App'x 493, 499 (6th Cir. 2012) (holding that state officials "must have, by virtue of the office, some connection with the alleged unconstitutional act or conduct of which the plaintiff complains.").   For both these reasons, the Fourteenth Amendment claim against the District Defendants cannot withstand Rule 12(b)(6) dismissal.

D.      *State-Created Danger Doctrine*

As discussed above, the Fourteenth Amendment guarantees that no "State [shall] deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV § 1.  "But nothing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors." *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 195 (1989); *see also M.J. v. Akron City Sch. Dist. Bd. of Educ.*, 1 F.4th 436, 448 (6th Cir. 2021).  So usually "a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." *DeShaney*, 489 U.S. at 197.

There is an exception to this general rule, however: the "state-created danger doctrine." *Lipman v. Budish*, 974 F.3d 726, 742 (6th Cir. 2020).  The doctrine applies "when the state affirmatively acts in a way that either creates or increases a risk that an individual will be exposed to private acts of violence." *Id.* at 744 (quotation omitted).  It requires a showing of (1) "an affirmative act" that "created or increased the risk" the plaintiff would be exposed to a private act of violence, (2) "a special danger" that "placed the plaintiff specifically at risk" as opposed to a risk to "the public at large," and (3) that "the state knew or should have known that its actions specifically endangered the plaintiff." *Cartwright v. City of Marine City*, 336 F.3d 487, 493 (6th Cir. 2003).

14

None of these elements are apparent from the second amended complaint. Dequan A. does not plausibly explain how the District Defendants "placed" J.L. "specifically at risk" of any violent act from a private third-party. And even if they somehow did place J.L. in such a predicament, Dequan A. fails to show how the District Defendants could have known their actions endangered J.L. *specifically* when there is no plausible basis to surmise they knew of J.L.'s existence (in the case of Dr. Vitti and Ford especially) or that he was at risk of third-party harm. (ECF No. 40, PageID.1076, ¶ 159). *See Jones v. Reynolds*, 438 F.3d 685, 696 (6th Cir. 2006) (observing that "[i]n the only cases where we have recognized a 'state created danger,' the government could have specified whom it was putting at risk, nearly to the point of naming the possible victim or victims."). As a result, the second amended complaint falls short of stating a plausible claim for relief under a "state-created danger" theory.[7]

   E.   *The Michigan Constitution*

Next, Dequan A. maintains that the District Defendants violated Article VIII, § 2 of the Michigan Constitution. That provision directs the Michigan Legislature

---

[7] Insofar as Dequan A. attempts to plead a municipal liability claim against the district pursuant to *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978), he is unsuccessful because the second amended complaint fails to plausibly show that either Dr. Vitti or Ford violated the United States Constitution. *See In re Estate of White*, 957 F.3d 714, 725 (6th Cir. 2020) (holding that "there can be no *Monell* municipal liability under § 1983 unless there is an underlying unconstitutional act.").

to "maintain and support a system of free public elementary and secondary schools as defined by law." Mich. Const. art. VIII, § 2.  Michigan courts, however, do not recognize a "direct cause of action arising under" Article VIII, § 2 of the Michigan Constitution. *L.M. v. State*, 307 Mich. App. 685, 696 (2014).  So Dequan A. cannot resort to the state constitution to obtain the relief he seeks in the second amended complaint.

### F.     Negligence

Lastly, Dequan A. claims that the District Defendants "breached their duty to provide disabled J.L. a school environment where a known [learning disabled] and [emotionally disturbed] student can realize a FAPE, and a state guaranteed public education" in a non-violent setting. (ECF No. 40, PageID.1080-81, ¶ 169).

At the motion to dismiss stage, ordinary negligence requires a plausible assertion that "(1) the defendant owed the plaintiff a duty, (2) the defendant breached that duty, (3) the breach was the proximate cause of the plaintiff's injury, and (4) the plaintiff suffered damages." *Estate of Trueblood v P&G Apartments, LLC*, 327 Mich. App. 275, 285 (2019) (quotation omitted).

But Dequan A. points to no authorities establishing a duty under Michigan tort law to provide a FAPE or a guaranteed public education to students with disabilities. And federal courts lack the authority to fashion causes of action not recognized previously under state law. *See Garst v. Tritle*, 928 F.2d 81, 84 (4th Cir. 1990)

16

(holding that "a state claim which has not been recognized by that jurisdiction's own courts constitutes a settled question of law, which will not be disturbed by this court absent the most compelling of circumstances."); *see also Tarr v. Manchester Ins. Corp.*, 544 F.2d 14, 15 (1st Cir. 1976) (holding that federal courts must "apply state law, not . . . participate in an effort to change it."); *Bolan v. City of Keego Harbor*, No. 01-74467, 2002 U.S. Dist. LEXIS 21975, at *20 (E.D. Mich. Oct. 24, 2002) ("Since the Michigan Supreme Court has not recognized this tort, I cannot do so."). Absent this showing – *i.e.*, the existence of a legal duty owed to J.L. – the negligence claim against the District Defendants must be dismissed.  Accordingly,

IT IS ORDERED that the District Defendants' motion to partially dismiss the amended complaint (ECF No. 46) is granted in part and denied in part.

IT IS FURTHER ORDERED that the motion is granted as to the ADA, Rehabilitation Act, state-created danger, negligence, and federal and state constitutional claims, as well as the IDEA claim insofar as it is asserted against Dr. Vitti and Ford.

IT IS FURTHER ORDERED that the motion is denied as to the IDEA claim insofar as it is asserted against the district.

IT IS FURTHER ORDERED that the Clerk of the Court is directed to terminate Dr. Vitti and Ford from the docket as party defendants to this action.


Dated: September 15, 2025          <u>s/ Robert J. White</u>
                                          Robert J. White
                                          United States District Judge