UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEQUAN A., parent and next friend of J.L., a minor,

Plaintiffs,

v.

GRETCHEN WHITMER, et al.,

Defendants.

Case No. 23-cv-12675

Honorable Robert J. White

**OPINION AND ORDER GRANTING THE DETROIT PUBLIC SCHOOLS COMMUNITY DISTRICT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFFS' CROSS-MOTION FOR SUMMARY JUDGMENT**

## I. Introduction

Dequan A. commenced this action against the Detroit Public Schools Community District for judicial review under the Individuals with Disabilities Education Act ("IDEA") on behalf of his minor son, J.L. The second amended complaint alleges, among other things, that the District failed to provide J.L. with a "free appropriate public education" under the statute.

Before the Court are the parties' cross-motions for summary judgment as well as the associated responses and replies. (ECF Nos. 69, 71-72, 74, 77-78). The Court will decide the cross-motions without a hearing pursuant to E.D. Mich. LR 7.1(f)(2).

For the following reasons, (1) the District's motion for summary judgment is granted, and (2) Dequan A.'s cross-motion for the same relief is denied.

II. Background

*A. Factual History*

Dequan A. is J.L.'s father, a 13-year-old African-American child enrolled as a student in the Detroit Public Schools Community District. (ECF No. 40, PageID.1020, ¶ 24). J.L. is a "learning disabled" and "emotionally disturbed" student who already receives special education services.[1] (*Id.*; *see also id.*, PageID.1041, ¶ 73). Dequan A. claims that the District failed to properly reevaluate J.L. in October 2022 as mandated under the IDEA. (*Id.*, PageID.1042-43, ¶¶ 77-80). He also alleges that the District never invited him to J.L.'s individualized educational program ("IEP") team meeting that same month.[2] (*Id.*, PageID.1045-46, ¶¶ 88-89).

Dequan A. filed an IDEA administrative due process complaint against the District on January 19, 2023. (ECF No. 66-2, PageID.1793). The Michigan Department of Education requested a hearing before the Michigan Office of

---

[1] The parties do not contest that J.L. suffers from Attention Deficit-Hyperactivity Disorder and Oppositional Defiant Disorder "for which he is receiving services." (ECF No. 66-2, PageID.1818 n.8).

[2] J.L.'s parents are not married. An administrative law judge concluded that the District might not have known to notify Dequan A. about the IEP team meeting since J.L.'s mother never provided Dequan A.'s contact information to school officials when she enrolled J.L. for classes. (ECF No. 66-2, PageID.1818).

Administrative Hearings and Rules. (*Id.*). An administrative law judge ("ALJ") conducted an evidentiary due process hearing on May 15-18, 2023. (*Id.*, PageID.1795).

In an August 18, 2023 decision and order, the ALJ concluded that (1) Dequan A. failed to demonstrate that the District should have reassessed J.L. in October 2022, (2) the District did not fail to provide J.L. with a "free appropriate public education," and (3) the evidence did not show that J.L. is entitled to Extended School Year services or assistive learning technologies. (ECF No. 66-2, PageID.1819, 1822-23, 1827). Dequan A. contests all three findings.

*B. Procedural History*

Dequan A. filed this lawsuit under the IDEA seeking judicial review of the ALJ's decision and order. (ECF No. 1). Aside from challenging the ALJ's findings, the second amended complaint alleged, among other things, that the District (as well as its superintendent and general counsel) violated J.L.'s rights under the IDEA, the Americans with Disabilities Act of 1990, the Rehabilitation Act of 1973, the Fourteenth Amendment to the United States Constitution, and Article VIII, § 2 of the Michigan Constitution. (ECF No. 40, PageID.1041-80, 1082-97, ¶¶ 72-168, 173-94). It also asserted a state law claim for ordinary negligence. (*Id.*, PageID.1080-81, 1087-88, ¶¶ 169-72, 195-98).

In a September 15, 2025 opinion and order, the Court granted in part and denied in part the District's motion to partially dismiss the second amended complaint. (ECF No. 60). The Court dismissed all the causes of action except for the IDEA claim asserted against the District. (*Id.*, PageID.1583-85, 1595). The parties now cross-move for summary judgment based on the administrative record. (ECF Nos. 69, 71).

III. <u>Standard of Review</u>

District courts review state administrative IDEA determinations under a "modified de novo" standard. *L.H. v. Hamilton Cnty. Dep't of Educ.*, 900 F.3d 779, 790 (6th Cir. 2018). This level of review requires district courts to independently re-examine the record and make findings based upon a preponderance of the evidence. *Burilovich v. Bd. of Educ. of Lincoln Consol. Schs.*, 208 F.3d 560, 565-66 (6th Cir. 2000); *see also* 20 U.S.C. § 1415(i)(2)(C). Still, district courts must afford "due weight" to an ALJ's determinations. *L.H.*, 900 F.3d at 790. "Due weight" means (1) setting aside an ALJ's findings only where "the evidence before the court is more likely than not to preclude the administrative decision from being justified based on the agency's presumed educational expertise, a fair estimate of the worth of the testimony, or both," and (2) deferring to the ALJ on questions involving educational expertise. *Burilovich*, 208 F.3d at 567.

## IV. Analysis

### *A. IDEA Overview*

The IDEA mandates that children with disabilities receive special-education services and establishes administrative remedies to achieve that aim. *Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230, 245 (2009); *Covington v. Knox Cty. Sch. Sys.*, 205 F.3d 912, 915 (6th Cir. 2000). The IDEA authorizes states to receive federal funding so they can provide a "free appropriate public education" ("FAPE") to children with certain physical or intellectual disabilities. 20 U.S.C. §§ 1412(a)(1)(A), 1401(3)(A)(i). FAPE requires "special education and related services," which includes (1) an "instruction" component tailored to meet a child's educational needs, and (2) a "supportive services" component that enables the child to receive educational instruction. 20 U.S.C. § 1401(9), (26), (29).

The "primary vehicle for implementing a FAPE is the individualized educational program, or IEP." *J.L. v. Williamson Cnty.*, No. 23-5704, 2024 U.S. App. LEXIS 19406, at *4 (6th Cir. Aug. 2, 2024) (quotation omitted); *see also* 20 U.S.C. §§ 1412(a)(4), 1414(d)(2). An IEP is a document that "state[s] the student's educational status, the annual goals for the student's education, the special-educational services and aides to be provided to meet those goals, and the extent the student will be 'mainstreamed,' *i.e.*, spend time in school environments with non-disabled students." *L.H.*, 900 F.3d at 788; *see also* 20 U.S.C. § 1414(d)(1)(A). An

IEP team meeting is a conference between school officials and the student's parents where the IEP is formulated. 20 U.S.C. § 1414(d)(1)(B).

The IDEA establishes a formal administrative process to adjudicate disputes. *See* 20 U.S.C. § 1415(f)-(g). A child's parent or guardian may file an administrative complaint with the local or state educational agency challenging whether the child is receiving a FAPE. 20 U.S.C. §§ 1415(b)(6)(A), (f)(1)(A); *see also* 29 U.S.C. § 1401(23)(B) (including "guardian" in the statutory term "parent"). A private right of action exists for "any party unhappy with the outcome of the administrative process" to "seek judicial review by filing a civil action in state or federal court." *Sophie G. v. Wilson Cty. Schs.*, 742 F. App'x 73, 76 (6th Cir. 2018); *see also Traverse Bay Area Intermediate Sch. Dist. v. Mich. Dep't of Educ.*, 615 F.3d 622, 629-30 (6th Cir. 2010); 20 U.S.C. § 1415(i)(2)(A).

Since the IDEA contemplates that the child's parent or guardian will be squaring off against the "local educational agency" during the administrative process, 20 U.S.C. §§ 1415(b)(6)(A), (f)(1)(A), only those parties may be "aggrieved by the findings and decision" of the administrative hearing officer and only they may be parties to "a civil action with respect to the [administrative] complaint . . ." 20 U.S.C. § 1415(i)(2)(A); *see also Stanek v. St. Charles Cmty. Unit Sch. Dist. #303*, 783 F.3d 634, 640 (7th Cir. 2015) (stating that the "IDEA designates the 'local educational agency' as the proper defendant."); *Anchorage Sch. Dist. v. M.P.*, 689

F.3d 1047, 1054 (9th Cir. 2012) (observing that either the "parents or the school district . . . may seek judicial review in state or federal court" under the IDEA); *Maroni v. Pemi-Baker Reg'l Sch. Dist.*, 346 F.3d 247, 252 (1st Cir. 2003) ("Congress sought to confer the right to judicial review of due process hearings upon all parties involved in such hearings: school districts, parents, and children."); *cf. J.S. v. N.Y. State Dep't of Corr.*, 76 F.4th 32, 43 (2d Cir. 2023) (holding that the IDEA's "provisions allow only the 'parent' and 'public agency' to present a due process complaint about the provision of a FAPE to a child with a disability.").

*B. Reevaluation*

1. The Law

The IDEA mandates that local educational agencies – like the District – reevaluate "each child with a disability . . . at least once every 3 years." 20 U.S.C. § 1414(a)(2)(A), (B)(ii). The child's parent and the local educational agency may "agree," however, "that a reevaluation is unnecessary." 20 U.S.C. § 1414(a)(2)(B)(ii). During the reevaluation, the IEP Team must "review existing evaluation data on the child." 20 U.S.C. § 1414(c)(1)(A). These materials include "evaluations and information" obtained from the child's parents, classroom-based observations and assessments, and observations from teachers or "related services providers," *i.e.*, occupational or speech therapists. 20 U.S.C. § 1414(c)(1)(A)(i)-(iii).

After reviewing this information and receiving "input from the child's parents," the IEP Team must identify any additional data necessary to determine the child's "present levels of academic achievement and related developmental needs," as well as "whether the child continues to need special education and related services." 20 U.S.C. § 1414(c)(1)(B)(ii)-(iii).

In the event the IEP Team concludes that "no additional data" is needed, the local educational agency must notify the child's parents of (1) the "determination and the reasons for the determination," and (2) the parents' right to request an assessment to examine "the child's educational needs." 20 U.S.C. § 1414(c)(4)(A)(i)-(ii). The local educational agency has no obligation to "conduct such an assessment" unless the parent requests it. 20 U.S.C. § 1414(c)(4)(B).

2. Application

Dequan A. raises several objections to the ALJ's finding that the District conducted J.L.'s reevaluation appropriately. The Court will address each of them in turn.

*Lack of an Assessment*. Dequan A. first contends that the District failed to assess J.L.'s educational needs during the reevaluation. (ECF No. 69, PageID.2959-65, 2979-80). The record shows otherwise.

The review of existing evaluation data and evaluation plan (the "REED") indicates that J.L.'s mother "verbally agreed at the beginning of the school year that

a *formal evaluation is not warranted* at this current time and can be re-considered on an as-needed basis." (ECF No. 66-3, PageID.2413) (emphasis added). The District emailed the REED to J.L.'s mother on October 19, 2022. (ECF No. 66-2, PageID.2373-74). She never objected to the above language, which further evinced her agreement to forgo an assessment. Although she received an invitation, J.L.'s mother also did not attend the October 17, 2022 IEP meeting. (*Id.*, PageID.2340; *see also id.*, PageID.2063, 2387, Tr. 575:19-23). And Dequan A. produced no evidence demonstrating that J.L.'s mother had ever rescinded her agreement to forgo an assessment or that she had changed her mind and requested one instead. (*Id.*, PageID.1817-18).

Insofar as Dequan A. testified that he would have requested an assessment if he had known about the REED and the IEP meeting, there is no evidence that J.L.'s mother designated him as a parental contact when she enrolled J.L. in school. Dequan A. testified that he never attempted to provide his contact information to the District. (ECF No. 66-2, PageID.1818). Nor does the record indicate whether the District "had been notified that it needed to contact" Dequan A., in addition to J.L.'s mother, "due to their custodial relationship."[3] (*Id.*). Because the evidence shows that

[3] The ALJ noted that J.L.'s general education teacher had Dequan A.'s cellphone number at some point. But "no evidence was presented to establish when or how she had obtained it, or if this information was available prior to the October 17, 2022 REED." (ECF No. 66-2, PageID.1818; *see also id.*, PageID.1962, Tr. 759:15-25).

J.L.'s mother consented to forgo an assessment, the ALJ correctly decided that the District had no obligation to conduct one during the reevaluation. (*Id.*, PageID.1817-18).

*Dr. Rajendra Kanneganti's 2019 Psychiatric Evaluation*. Dequan A. also maintains that the District's reevaluation was deficient because it failed to consider Dr. Kanneganti's 2019 psychiatric report. (ECF No. 72, PageID.3148). The record shows that the District did not possess the 2019 report when it conducted the REED and drafted the 2022 IEP. (ECF No. 66-2, PageID.1810, ¶ 39; *see also id.*, PageID.1996-97, 2194, 2196, Tr. 897:22-898:1, Tr. 487:7-9, Tr. 493:17-22). But the IEP team members did consult J.L.'s 2021 IEP, which relied upon and incorporated the 2019 report's conclusion that J.L. suffers from Attention Deficit-Hyperactivity Disorder and Oppositional Defiant Disorder. (ECF No. 66-2, PageID.1810, ¶ 37; *see also id.*, PageID.2056, Tr. 545:23-25; ECF No. 66-3, PageID.2405, 2417). And the IEP team members included this diagnosis in the 2022 IEP. (ECF No. 66-2, PageID.2388).

Insofar as Dequan A. now faults the District for ignoring the 2019 report's examination of J.L.'s family psychological history, that portion of the report does not undermine the IEP. Dr. Kanneganti did not find that J.L. suffered from anxiety or depression like his relatives. Nor did she opine that J.L. experienced suicidal ideations or that J.L.'s condition warranted a suicide risk assessment. (ECF No. 66-

3, PageID.2405). And to the extent Dequan A. asserts that the 2019 report was outdated by the time the District conducted the 2022 IEP, he failed to rebut the testimony from J.L.'s general education teacher that the 2019 report accurately reflected J.L.'s behavioral status during the 2022-23 academic year. (ECF No. 66-2, PageID.1974-75, 1980, Tr. 809:18-22, Tr. 811:9-18, Tr. 831:2-14). So the ALJ did not err when he concluded that the District appropriately considered the 2019 report as incorporated through the 2021 IEP. (ECF No. 66-2, PageID.1816).

*Failure to Invite J.L.'s Parents to the IEP Meeting*. Next, Dequan A. claims that the District conducted a deficient REED because no one invited him or J.L.'s mother to the October 17, 2022 IEP meeting. (ECF No. 72, PageID.3148). The evidence refutes this position. J.L.'s mother received an invitation to attend the IEP meeting but did not appear at the scheduled time. (ECF No. 66-2, PageID.2340; *see also id.*, PageID.2063, 2387, Tr. 575:19-23). And, again, there is no proof that the District was made aware of a need to contact Dequan A. regarding J.L.'s placement. (ECF No. 66-2, PageID.1818). As a result, the ALJ properly held that the District is not responsible for the parents' absence from the October 17, 2022 IEP meeting. (*Id.*).

*Medical Information*. Lastly, Dequan A. faults the ALJ's decision for broadly holding that school districts have no obligation to consider a child's "medical

information, prescriptions, or medications" when drafting an IEP. (ECF No. 72, PageID.3148-52). This reading of the decision is inaccurate.

The ALJ opined that the IDEA did not compel the District to review Dr. Kanneganti's 2019 psychiatric evaluation because (1) the IEP Team did not possess the report when it conducted the REED, and (2) the Team, in any event, accepted the report's findings – that J.L. suffers from Attention Deficit-Hyperactivity Disorder and Oppositional Defiant Disorder – and incorporated those findings into the 2022 IEP. (ECF No. 66-2, PageID.1816-17; *see also* ECF No. 66-3, PageID.2405, 2417). What is more, the ALJ ruled that the District had no duty to conduct an updated psychiatric evaluation of J.L. when classroom observations and other evaluative data indicated that his behavioral profile remained unchanged. (*Id.*, PageID.1817-19; *see also id.*, PageID.1974-75, 1980, Tr. 809:18-22, Tr. 811:9-18, Tr. 831:2-14).

Dequan A. disagrees. He argues that the Sixth Circuit Court of Appeals' decision in *Lakin v. Birmingham Pub. Sch.*, 70 F. App'x 295 (6th Cir. 2003) mandates that school districts always review a child's "medical information" whenever creating an IEP. It does not. All *Lakin* says is that a school district's IEP team did not improperly exclude a student's treating physician from the IEP conference because the team "had the benefit of [the child's] school and hospital records, including medical reports from his physicians" when drafting the IEP. *Id.* at 297. *Lakin* did not fashion a blanket rule that school districts must always consider a

student's medical records and prescription drug history when crafting the IEP or risk violating the IDEA.

For all these reasons, the ALJ properly concluded that the District's reevaluation complied with the statute.

*C. FAPE*

Dequan A.'s second objection to the ALJ's decision fares no better. A child's parents carry the burden of showing – by a preponderance of the evidence – that an IEP is deficient. *See Barnett v. Memphis City Schs.*, 113 F. App'x 124, 128 (6th Cir. 2004); *see also Renner v. Bd. of Educ of the Pub. Sch. of Ann Arbor*, 185 F.3d 635, 642 (6th Cir. 1999). Dequan A. fails to meet this requirement.

*IEP Deficiencies*. To begin with, Dequan A. does not identify "a single support or service that [J.L.] needed for the purposes of receiving a FAPE" that he did not already receive pursuant to the 2022 IEP. (ECF No. 74, PageID.3188-89). Nor does he show that "the goals and objectives, the supplementary aids and services, and/or the amount of service time in the October 17, 2022 IEP were inappropriate." (*Id.*, PageID.3188). In fact, Dequan A. conceded that the services J.L. received under the 2021 IEP, which the District readopted in the 2022 IEP, were appropriate. (ECF No. 66-2, PageID.2288-89, Tr. 209:25-210:3). So Dequan A. falls far short of demonstrating how the 2022 IEP failed to provide J.L. with a FAPE or

that J.L. did not make sufficient "progress towards the goals identified in the IEP." (ECF No. 66-2, PageID.1822).

*Standardized Test Scores*. Dequan A. further contends that the IEP is inadequate because J.L.'s past standardized test scores demonstrate a lack of proficiency in mathematics and reading. (ECF No. 72, PageID.3160-61). But J.L.'s special education teacher testified that his reading scores improved to second-grade level by the end of the 2022-23 academic year. (ECF No. 66-2, PageID.2163, Tr. 360:7-10). Her service notes indicate that J.L. was able to stay focused on his math assignments and that he exhibited progress towards achieving his goal of 75 percent accuracy when computing algebraic formulas (*Id.*, PageID.2360). J.L.'s speech therapist noted that he continued to improve his vocabulary skills for age-appropriate words when reading stories. (*Id.*, PageID.2352). And he generated three complete sentences, using selected unfamiliar vocabulary words, with about 75 percent accuracy. (*Id.*).

Although J.L. still was not performing at grade level, the ALJ properly concluded that Dequan A. "presented [no] evidence that [J.L.'s] previous rate of academic growth has declined, or is not improving" or that J.L. "is not on track to achieve his expected goals." (*Id.*, PageID.1822).

*Remaining Arguments*. Dequan A.'s remaining assertions concerning the denial of a FAPE largely track the grounds he advances for invalidating the

reevaluation, namely, the District's failure to consider Dr. Kanneganti's 2019 psychiatric report, its failure to obtain sufficient parental input when creating the IEP, *etc.* (ECF No. 72, PageID.3153-58). These arguments lack just as much merit on this go-around as they did before. *See supra* Section IV.B.

Now, Dequan A. does raise a new argument; that neglecting to obtain J.L.'s updated prescription drug information rendered the IEP incomplete and denies J.L. a FAPE. (ECF No. 72, PageID.3159-60). But that inferential leap is difficult to comprehend when Dequan A. fails to explain how the District's knowledge of the prescriptions would have altered either (1) the IEP's determination that J.L. qualified for special education services, or (2) the District's provision of specific services. And without connecting those dots, the Court is left to draw the same conclusion as the ALJ: that Dequan A. "failed to establish, by a preponderance of the evidence, that [the District's] IEP is not reasonably calculated to enable [J.L.] to make appropriate progress considering [J.L.'s] circumstances." (ECF No. 66-2, PageID.1823).

*D. Extended School Year (ESY) Instruction*

Next, Dequan A. asserts that the District should provide J.L. with Extended School Year instruction. (ECF No. 69, PageID.3008-11). School districts must provide Extended School Services when they are necessary to provide students with a FAPE. 34 C.F.R. § 300.106(a). This requirement is triggered only when "the

child's IEP team determines that such services are necessary for the provision of FAPE to the child." *Bd. of Educ. v. L.M.*, 478 F.3d 307, 314-15 (6th Cir. 2007) (quotation omitted); *see also* 34 C.F.R. § 300.106(a). "[P]roviding an ESY is the exception and not the rule under the regulatory scheme." *Cordrey v. Euckert*, 917 F.2d 1460, 1473 (6th Cir. 1990).

In the Sixth Circuit, "the burden is on the claimant proposing an ESY to demonstrate, in a particularized manner relating to the individual child, that an ESY is necessary to avoid regression so severe that the child would not be able to catch up during the following school year." *L.M.*, 478 F.3d at 315. That means "[i]f the child benefits meaningfully within his potential from instruction under a proper IEP over a regular school year, then ESY service may not be required under the Act unless the benefits accrued to the child during the regular school year will be significantly jeopardized if he is not provided an ESY." *Id.* (quotation omitted). Claimants may rely upon expert opinion testimony to meet this heightened standard; they "are not required to present empirical proof of actual prior regression." *Id.*; *see also Cordrey*, 917 F.2d at 1471-72.

Here, Dequan A. offered no expert witness or empirical evidence demonstrating that the academic progress J.L. achieved during the academic year would be "significantly jeopardized if he is not provided an ESY." *L.M.*, 478 F.3d at 315 (quotation omitted). (ECF No. 66-2, PageID.1826) ("In this case, Petitioners

have not presented any evidence that shows that Student would experience a regression of skills or knowledge that cannot be recouped within a reasonable period of time.”). Instead, J.L.’s special education teacher testified that his reading scores *improved* from a first to a second-grade level. (ECF No. 66-2, PageID.2162-63, Tr. 359:15-360:10). And the District’s psychologist stated that the IEP team reviewed J.L.’s eligibility for ESY at the October 17, 2022 IEP meeting and concluded that he did not qualify for these services based upon his progress monitoring data. (*Id.*, PageID.2060-61, Tr. 563:8-564:25).

Because Dequan A. failed to meet his burden of demonstrating J.L.’s entitlement to ESY instruction, the ALJ’s decision that those services are not “warranted” is affirmed.

*E. Compensatory Education*

In addition to ESY, Dequan A. seeks compensatory education services for J.L. (ECF No. 69, PageID.3004-05; ECF No. 72, PageID.3162-63). An award of compensatory education services “is an equitable remedy that a court can grant as it finds appropriate.” *L.M.*, 478 F.3d at 316; *see also* 20 U.S.C. § 1415(i)(2)(C)(iii). Such an award hinges upon an “established” IDEA violation. *Woods v. Northport Pub. Sch.*, 487 F. App’x 968, 978 (6th Cir. 2012). One that must be “established” through a preponderance of the evidence. 20 U.S.C. § 1415(i)(2)(C)(iii).

Since Dequan A. proffered no evidence (1) that the District failed to provide J.L. with a FAPE, (2) that J.L.'s previous charter school failed to provide him with a FAPE, or (3) that the District could somehow be held responsible for the previous charter school's failure to provide J.L. with a FAPE, the ALJ correctly determined that Dequan A. is not entitled to an award of compensatory education services. (ECF No. 66-2, PageID.1824-25).

*F. Other Remedies*

Dequan A. asks for several other equitable remedies as well. None of them are appropriate.

His request that J.L. receive assistive technology – like a personal computer or tape recorder – must be denied because there is no evidence in the record showing that J.L. would be denied a FAPE if he did not have access to these devices. (ECF No. 69, PageID.3007-08). And Dequan A.'s demand that the District evaluate J.L. to assess whether he suffers from autism is unfounded. (*Id.*, PageID.3005-06). Aside from a family history, nothing in the record shows that J.L. was ever diagnosed with autism or that he exhibited autistic-related behaviors.[4]

That leaves Dequan A.'s request for J.L.'s residential placement in a private special education school. (*Id.*, PageID.3011-12). Since he failed to ask for this relief

[4] Nor was the IEP team made aware of that family history when they created the 2022 IEP. (ECF No. 66-2, PageID.2199-2200, Tr. 507:24-508:3).

at the administrative hearing the issue is not properly exhausted. *See F.C. v. Tenn. Dep't of Educ.*, 745 F. App'x 605, 608 (6th Cir. 2018). And Dequan A. may not petition the district court for this relief in the first instance. (ECF No. 66-2, PageID.1828) (stating that "any claims or defenses not specifically addressed are dismissed with prejudice.").

At any rate, Dequan A. is not entitled to reimbursement for private placement because, as discussed above, the ALJ correctly found that the District provided J.L. with a FAPE. And the IDEA does not require private placement where the local educational agency "made a free appropriate public education available to the child." 20 U.S.C. § 1412(a)(10)(C)(i); *see also N.W. v. Boone County Bd. of Educ.*, 763 F.3d 611, 615-16 (6th Cir. 2014) (interpreting the IDEA to mean "that public school districts do not need to pay for the private-school education of students if the district offers a FAPE."). Accordingly,

IT IS ORDERED that the District's motion for summary judgment (ECF No. 71) is granted.

IT IS FURTHER ORDERED that Dequan A.'s cross-motion for summary judgment (ECF No. 69) is denied.

Dated: September 18, 2026

s/ Robert J. White
Robert J. White
United States District Judge